**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**BARRY PRESTON WRIGHT,**<br><br>Defendant. | **Case No: 17-03114-01-CR-S-MDH** |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States of America, by and through Timothy A. Garrison, United States Attorney for the Western District of Missouri, and undersigned counsel, respectfully submits this sentencing memorandum in the above-captioned matter, set for a sentencing hearing on June 19, 2018. For the reasons set forth below, the United States requests that upon consideration of the sentencing factors set forth pursuant to 18 U.S.C. § 3553, this Court sentence the defendant, Barry Preston Wright (Wright), to a sentence of 27 months' incarceration, which is within the applicable Guidelines range.

**I. BACKGROUND**

On December 11, 2017, Wright pleaded guilty before U.S. District Judge Douglas Harpool to the sole count of an Indictment charging him with attempted escape from custody, in violation of 18 U.S.C. § 751(a). The final Presentence Investigation Report (PSR) was filed on March 7, 2018. Based on Wright's criminal history category of VI and a total offense level of 11, the Guidelines imprisonment range is 27 to 33 months within Zone D of the Sentencing Table. (PSR 16, ¶ 70.) Neither party filed an objection to the PSR. (PSR 20.)

Pursuant to the plea agreement between the parties, the United States will specifically request a sentence at the low-end of the Guidelines range, while the defendant may request any sentence he believes is appropriate. (Doc. 20, pg. 6, ¶ 10(f))[1].

The sentencing hearing is scheduled for June 19, 2018. Based on the facts set forth below, the United States respectfully requests that its recommendation of 27 months' imprisonment, which is within the Guidelines Range, be adopted by this Honorable Court as an appropriate sentence in light of the factors set forth under § 3553(a), and the additional facts associated with this case and the defendant.

## II. LEGAL STANDARD

Although the Sentencing Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220 (2005), sentencing still begins with a properly calculated advisory Sentencing Guidelines range. *See Gall v. United States*, 128 S. Ct. 586, 596 (2007); *Rita v. United States*, 127 S. Ct. 2456, 2464-65 (2007); *Booker*, 543 U.S. at 245-46; *United States v. Plaza*, 471 F.3d 928, 930 (8th Cir. 2006). Next, the Court must decide if a traditional departure under the Guidelines is appropriate, thus creating an advisory Guidelines sentencing range. *Plaza*, 471 F.3d at 930. After calculating the advisory Guidelines range, the Court considers that range, along with all the factors listed in 18 U.S.C. § 3553(a), in arriving at the final sentence. *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007); *Plaza*, 471 F.3d at 930. The district court, utilizing the § 3553(a) sentencing factors, . . . can impose a more severe or more lenient sentence, as long as it is reasonable. *United States v. Gregg,* 467 F.3d 1126, 1128-29 (8th Cir. 2006). The § 3553(a) factors relevant to this matter are:

---

[1] "Doc. 20" refers to District Court Record No. 20, filed on December 11, 2017 in *United States v. Barry Preston Wright*, 17-03114-01-CR-S-MDH.

2

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant . . . (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [under the Sentencing Guidelines]; . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### III.  DISCUSSION

#### A.  Statutory and Guidelines Calculations

The final PSR, filed on March 7, 2018, finds the maximum term of imprisonment for the sole count of the Indictment is 5 years; a Guidelines imprisonment range of 27 months to 33 months, with Wright being eligible for probation pursuant to the statute, but ineligible for probation pursuant to the Guidelines; a statutory supervised release term of not more than three years; and a Guidelines supervised release term of one year to three years. (PSR 16-17, ¶¶ 69-70, 72-75.) The United States concurs with this assessment.

In this case, the United States agreed to limit its sentencing recommendation to the low-end of the Guidelines range, and thus, a recommendation of 27 months is consistent with the terms of the plea agreement.

#### B.  Statutory Sentencing Factors

In the vast majority of cases, the properly calculated Sentencing Guidelines range corresponds to a sentence that fully satisfies the 18 U.S.C. § 3553(a) factors.[2]  This is because a

---

[2]The § 3553(a) factors include:
    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed-

3

within-Guidelines sentence reflects the accumulated wisdom and expertise of the United States Sentencing Commission. *See Kimbrough*, 128 S. Ct. at 574. Consequently, only in rare cases will full consideration of the § 3553(a) factors call for a sentence outside the Guidelines range, either above or below. This is not one of those rare cases, and the United States respectfully submits that full consideration of these factors warrants a low-end Guidelines sentence of 27 months' imprisonment.

**1. Nature and Circumstances of the Offense**

On December 29, 2016, Wright absconded from the Alpha House, Residential Re-Entry Center, located in Greene County, within the Western District of Missouri. On January 4, 2017, United States District Judge Brian C. Wimes issued a supervised release violation arrest warrant for Wright. On January 6, 2017, Wright was arrested by officers with the Springfield, Missouri, Police Department on an outstanding federal arrest warrant, pending the revocation of Wright's supervised release for his prior conviction for being a felon in possession of firearms and ammunition, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). Wright was transported to the Greene County, Missouri, Jail for confinement on the federal felony

---

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed ... medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for-
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;
(5) any pertinent policy statement ...;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct....

4

arrest warrant. A Springfield police officer escorted Wright into the intake area of the Greene County Jail at approximately 5:54 p.m., where his intake paperwork was completed. Ultimately, Wright was placed into holdover cell #5 of the Greene County, Missouri, Jail facility.

At approximately 1:27 a.m., Greene County Booking Officer Morgan completed talking with Wright in the classification room of the Greene County Jail, and was returning him to holdover cell #5. As Wright and Officer Morgan neared holdover cell #5, Wright observed that both sliding doors between the intake and the booking area were open. At that instant, Wright fled from Officer Morgan, through the sliding doors into the intake area, and turned to the right, toward the intake door of the jail facility. Had Wright been able to run through the intake doors of the jail facility, he would have escaped from the jail and into the adjoining parking lot. After running around the corner from Officer Morgan, Wright then observed Sergeant Rennison and Deputy Devost standing between him and the intake door. During this entire time, officers were in foot pursuit of Wright and ordering him to stop running. Deputy Devost pulled his taser from its holster. Wright turned slightly to his left and ran past the north side of the intake desk, entering a room used by officers to interview arrestees, and closed the door. Officers pursued Wright into the room and Deputy Devost pointed his taser at Wright. Sergeant Rennison, Corporal Braender and Officer Morgan secured Wright and escorted him into the booking area of the jail. The entirety of Wright's attempt to escape from the Greene County Jail, while in the facility's custody on the aforementioned federal arrest warrant was recorded on the interior camera of the jail.

The facts associated with Wright's attempted escape from the Greene County Jail on January 6, 2017, demonstrate his complete lack of respect for the Court and the law. While Wright's criminal history will be discussed in greater detail later within this memorandum, the blatant lack of respect displayed by Wright cannot go without remark. Wright had been held within

the Greene County Jail for several hours and was being escorted by a deputy, when he attempted his impromptu escape from law enforcement. This attempted escape from the Greene County Jail was Wright's third. Wright's first conviction for escape occurred on July 21, 2006, when he was convicted of escape from jail in the 10th Judicial District Court, in Fort Sumner, New Mexico. (PSR 9, ¶ 32). Wright's second escape occurred on December 29, 2016, when he willfully and knowingly absconded from the Alpha House, in Greene County, Missouri. (PSR 3, ¶ 3).

In this case, Wright was literally one locked door away from escaping the custody of the Greene County Jail. Had deputies, who were responsible for security, been less than vigilant, Wright's attempt to escape would have been successful, and a potentially dangerous criminal would have been back out on the streets. The only mitigating factor associated with Wright's attempted escape was the ridiculousness of his attempt to flee on foot from the confines of the county jail. Wright's impulsive criminal actions in attempting to flee on foot while within the jail thoroughly demonstrate that this defendant is inherently dangerous, and has no regard for the law or law enforcement. In light of the aforementioned facts, the United States asserts that Wright's criminal conduct warrants a low-end, Guidelines sentence of 27-months imprisonment.

## 2. History and Characteristics of the Defendant

In addition to the dangerous and violent criminal acts committed by Wright in this case, he has amassed a considerable criminal history score of 16 based upon numerous prior felony and misdemeanor convictions including, but not limited to, repeated convictions for possession of firearms, burglary, assault, possessing a deadly weapon in a penal institution, aggravated battery on a law enforcement officer, assault by a prisoner, escape from jail, and driving while intoxicated (DWI). Since the age of 13, Wright has amassed 16 criminal history points for a total criminal history score of VI. (PSR 10, ¶¶ 33-34). In fact, many of Wright's prior convictions are unscored

because they involved juvenile adjudications. (PSR 5-6, ¶¶ 20-23). Additionally, many other convictions are not scored because Wright's prior convictions included misdemeanor offenses. (PSR 7, ¶¶ 25-28). Wright has been convicted 13 different times for 21 different felony and misdemeanor offenses. (PSR 5-10, ¶¶ 20-32.) Furthermore, at the time Wright attempted to escape from the Greene County Jail, he had escaped from the Alpha House, while still serving his federal sentence for being a felon in possession of a firearm. (PSR 9, ¶ 31.)

Finally, in addition to his many criminal convictions, Wright has been charged or arrested for many more crimes. Along with his drug offenses, Wright has been repeatedly charged with domestic assault, unauthorized use of a vehicle, and unlawful possession of a firearm. (PSR 10-12, ¶¶ 36-45). When one examines Wright's criminal history, a clear pattern emerges: even when he has been incarcerated, this defendant has continued to violate the law and amass additional convictions.

If past is prologue, and Wright's criminal history is certainly indicative of his future conduct, there can be no doubt that this defendant is a danger to the community. The only mitigating factor in this case is the sheer ridiculousness of his attempt to escape custody. Upon considering Wright's true history and characteristics, when weighed against his 20-second attempt to run out of the Greene County Jail, a 27 months sentence is both warranted and reasonable in light of the defendant's commission of this crime.

### 3. Need to Promote Respect for the Law

As is evidenced by his PSR, Wright has 13 separate criminal convictions for 21 different criminal charges over the last 20 years. (PSR 5-10, ¶¶ 20-32.) Even though a criminal history score of 16 is well beyond the Guidelines range, some of Wright's prior criminal convictions are not scored because of the passage of time. Furthermore, at the time Wright committed this crime,

7

he was still in the custody of the Bureau of Prisons. In addition to his criminal convictions, Wright has also been arrested and charged on numerous other occasions. (PSR 10-12, ¶¶ 36-45.) Wright has completely and thoroughly demonstrated that he has no respect for the law or law enforcement. While Wright's criminal history clearly causes one to question whether he will ever have respect for the law or law enforcement, the United States would argue that a sentence of 27-months' incarceration is an appropriate sentence in light of Wright's 20-second attempt to escape the Greene County Jail.

**4. Need to Afford Adequate Deterrence to Criminal Conduct**

To the extent that rational actors are watching what the Court does here, a guideline sentence followed by supervised release will provide a meaningful deterrent to the nature of the criminal conduct in which Wright engaged. With respect to Wright, given the fact that his criminal history is somewhat underscored, and this case involves an escalation of his criminal conduct, a low-end Guidelines sentence of 27 months' incarceration is essential to send him a clear message that each and every time he commits a new crime, he will be incarcerated, regardless of the ridiculous nature of the crime being committed.

**5. Need to Protect the Public from Further Crimes of the Defendant**

Wright began living a criminal lifestyle at the extremely young age of 13 and his criminal conduct has continued entirely unabated for his entire life, leading up to the case now before this Court. Wright has repeatedly victimized every community he has lived within. Based upon his past and current criminal acts, there is no indication or reason to believe that Wright will choose to live a law-abiding life. As such, a Guidelines sentence of 27 months' is appropriate for Wright, and it will ensure that the public is protected from further re-victimization during that period of time.

8

Case 6:17-cr-03114-MDH Document 26 Filed 06/12/18 Page 8 of 10

## IV. CONCLUSION

The United States respectfully requests that the aforementioned § 3553 factors, including the nature and circumstances of Wright's violence and dangerous criminal offenses, his deplorable criminal history and characteristics, the need to promote respect for the law, the need to afford adequate deterrence, the need to protect the public from this defendant, be considered in reaching an appropriate sentence.

As such, the United States respectfully requests that this Court impose a Guidelines sentence of 27 months' imprisonment followed by 3 years of post-release supervision. Such a sentence is supported by the facts and circumstances of this case, as well as the § 3553 factors associated with Fuller.

Respectfully submitted,

TIMOTHY A. GARRISON
United States Attorney


*/s/ Patrick A.N. Carney*
PATRICK A.N. CARNEY
Assistant United States Attorney
Western District of Missouri
901 St. Louis Street, Suite 500
Springfield, Missouri 65806
(417)831-4406

## **CERTIFICATE OF SERVICE**

       I hereby certify that on this the 12th day of June, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

                                                */s/ Patrick A.N. Carney*
                                                PATRICK A.N. CARNEY